AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Amazon Tablet ("Target Device 5")
Seized as FP&F No. 2021250400087503-0004

Case No. **21-MJ-0564**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-5, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C Section 922(g)(1); 18 U.S.C. Sections 2, 554 and 371 | Felon in possession of a firearm and ammunition; aiding and abetting; smuggling goods from the United States; conspiracy to illegally export firearms |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Andrew Flood, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Andrew Flood, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means).*

Date: __02/11/2021__

*Judge's signature*

City and state: __San Diego, California__    Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-5

PROPERTY TO BE SEARCHED

The following property is to be searched:

>an Amazon Tablet ("Target Device 5")
>Seized as FP&F No. 2021250400087503-0004



Target Device 5 is currently in the possession of Homeland Security Investigations, located at 880 Front Street San Diego, CA 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1 through A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 1, 2020, up to and including January 1, 2021:

a. tending to indicate efforts to ~~export~~ export of firearms, ammunition, and/or ~~drug proceeds~~ from the United States to Mexico;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the the illegal exportation of firearms, ammunition, and/or ~~drug proceeds~~ from the United States to Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in illegal exportation of firearms, ammunition, from the United States to Mexico;

d. tending to identify travel to or presence at locations involved in the illegal exportation of firearms, ammunition, from the United States to Mexico, such as stash houses, load houses, distribution and/or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition); Title 18, United States Code Section 2 (aiding and abetting); Title 18, United States Code Section 554 (smuggling goods from the United States); and Title 18, United States Code, Section 371 (conspiracy to illegally export firearms).

# AFFIDAVIT

I, SPECIAL AGENT ANDREW FLOOD, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

   a. an LG cellphone with blue case
      IMEI: 354525117076859 ("Target Device 1")
      Seized as FP&F No. 2021250400087501-0006

   b. a gold Nokia cellular telephone ("Target Device 2")
      Seized as FP&F No. 2021250400087503-0001

   c. a black Motorola cellular telephone ("Target Device 3")
      Seized as FP&F No. 2021250400087503-0002

   d. a black Verizon Motorola cellular telephone (Target Device 4")
      Seized as FP&F No. 2021250400087503-0003

   e. an Amazon Tablet ("Target Device 5")
      Seized as FP&F No. 2021250400087503-0004
      (collectively referred to as the "Target Devices")

as further described in Attachment A-1 through A-5, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition); Title 18 United States Code Section 2 (aiding and abetting); Title 18, United States Code, Section 554 (smuggling goods from the United States); and Title 18, United States Code, Section 371 (conspiracy to illegally export

1

firearms) (collectively the "Target Offenses"), as further described in Attachment B. The requested warrant relates to the investigation of Alfonso Levi GARCIA, aka "Wolf" and Ramon SOTO-BASANEZ for felon in possession of a firearm (a Ruger 57 5.7 x 28mm serial number 641-30699) and ammunition (approximately 90 rounds of FNH, USA 5.7 x 28mm) and conspiring to illegally export the firearm and ammunition from the United States to Mexico. The Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 1996. Prior to the creation of HSI, I was a Special Agent with U.S. Immigration and Customs Enforcement (ICE) and the U.S. Immigration & Naturalization Service (INS). Prior to becoming a Special Agent, I was employed as a U.S Border Patrol Agent and a San Diego County Sheriff's Corrections Deputy.

4. I am currently assigned to the Violent Crimes Task Force – Gang Group ("VCTF-GG"). The VCTF-GG is a Federal Bureau of Investigation ("FBI") Safe Streets and High Intensity Drug Trafficking Area ("HIDTA") Task Force consisting of federal and local San Diego County law enforcement agencies. I have worked with VCTF-GG since 1998. During my tenure with HSI, I have participated in the investigation of criminal street gangs and various drug trafficking organizations ("DTO") involved in the importation and distribution of controlled substances into and through the Southern District of California and the exportation of firearms and drug trafficking proceeds currency from the United States to DTO's located in Mexico. Through my training, experience, and conversations with other law enforcement officers experienced in gang and drug trafficking

2

investigations, I have gained a working knowledge of the cooperation of Southern California Hispanic criminal street gangs ("Surenos") are recruited by DTO's to transport and distribute controlled substance. In Southern California, Sureno gang members are utilized by drug trafficking organizations to protect drug shipments and storage locations ("stash locations") within the Southern and Central Districts of California. DTO's have been known to recruit gang members to conduct kidnappings and murders in the United States and Mexico of rival members of the DTO. DTO's utilize gang members in every position of the drug trafficking business, to include the importation of controlled substances into the United States from Mexico at Ports of Entry, the distribution of controlled substances in the United States, and the exportation of firearms, ammunition, and drug proceeds from the United States to Mexico.

    5.    I am aware that it is common practice for drug and firearm traffickers to work in concert utilizing cellular telephones. A common tactic utilized by DTO's is to smuggle controlled substances into the United States by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry. DTO's also conceal drug proceeds, firearms, and ammunition in vehicles that depart the United States at Ports of Entry, such as the San Ysidro Port of Entry. With respect to the importation and exportation of prohibited items, such as controlled substances and firearms, I am aware that drug and firearm traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed the prohibited item. These communications can occur before, during and after the prohibited items are imported into the United States or exported from the United States. For example, prior to the importation or exportation, the traffickers frequently communicate with the driver regarding arrangements and preparation of the prohibited items. During transportation the traffickers are frequently in communication with the driver to remotely monitor the progress of the illegal activity, provide instructions to the driver and warn accomplices/co-conspirators about law enforcement activity. Traffickers may communicate with the driver to provide further instructions regarding the transportation of

the drugs, firearm, or drug proceeds to the final destination.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in areas of gangs, firearms trafficking, and/or drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in drug trafficking, possession of firearms, importation of controlled substances, and exportation of firearms, and/or drug proceeds and may yield evidence:

   a. tending to indicate efforts to illegally import controlled substances from Mexico into the United States and the illegal export of firearms, ammunition, and/or drug proceeds from the United States to Mexico;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and the illegal exportation of firearms, ammunition, and/or drug proceeds from the United States to Mexico;

   c. tending to identify co-conspirators, criminal associates, or others involved in illegal importation of controlled substances from Mexico into the United States and exportation of firearms, ammunition, and/or drug proceeds from the United States to Mexico;

   d. tending to identify travel to or presence at locations involved in the illegal importation of controlled substances from Mexico into the United States and the exportation of firearms, ammunition, and/or drug proceeds from the United States to Mexico, such as stash houses, load houses, distribution and/or delivery points;

4

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On December 30, 2020 at approximately 4:35 a.m., Customs and Border Protection Officers (CBPO) were conducting a southbound inspection operation at the San Ysidro Port of Entry of traffic traveling on the I-5 South from the United States attempting to make entry into Mexico. CBPO observed a white Honda Civic bearing a California license plate driven by a male, later identified as Ruben SOTO BASANEZ ("SOTO") SOTO claimed he purchased the Honda Civic earlier in the day. When asked if SOTO was carrying or transporting any firearm or ammunition, SOTO replied, "No." SOTO claimed he was traveling with his cousin, later identified as Alfonso Levi GARCIA, aka "Wolf" ("GARCIA). SOTO explained that GARCIA was driving a Chevrolet HHR bearing California license plate 7FOH001 behind him. SOTO claimed to be the owner of the Chevrolet HHR that GARCIA was driving.

8. CBPO referred SOTO for further inspection. A pat down of SOTO was conducted for officer safety, which revealed SOTO had an empty gun holster on his right hip. When asked if SOTO had any firearms, weapons, or ammunition on him, SOTO replied, "No, but there is a gun box inside my vehicle (the Chevrolet HHR driven by GARCIA). SOTO was escorted to the security office.

9. CBPO contacted GARCIA. GARCIA stated the owner of the Chevrolet HHR was his cousin, Ramon SOTO, and pointed to the white Honda Civic that SOTO had been driving. GARCIA claimed SOTO asked GARCIA to drive SOTO's HHR into Mexico. GARCIA stated he was intending to go to Tijuana, Mexico. GARCIA claimed he did not have any firearms, money, or ammunition on him or in the vehicle. GARCIA was escorted to the security office.

5

10. In the security office, when asked if there were any firearms or any type of weapons in either vehicle, SOTO and GARCIA both replied "No." SOTO only commented on there being an empty gun box under the driver seat of the Chevrolet HHR.

11. A CBPO currency/firearms K-9 alerted to the floor under the driver seat of the Chevrolet HHR and pawed at a Ruger handgun box. A CBPO conducted an inspection of the vehicle and observed a ratchet and socket tool tucked in between the two rear seats. CBPO noticed that the bolt to the rear seat looked as though it had been recently been tampered with. CBPO utilized the ratchet and socket tool to unscrew the bolt holding down the rear seat in order to lift up the rear seat. Under the passenger-side rear seat was a small void. CBPO observed an object wrapped in blue paper towels laying in the small void. CBP removed the object and discovered 2 boxes of ammunition totaling approximately 90 rounds. Inside the paper towels was a Ruger 57 5.7 x 28mm firearm, serial number 641-30699. The firearm was loaded with the magazine attached. Another loaded magazine was wrapped along with the firearm. The Ruger gun box was found under the driver seat of the Chevrolet HHR. The Ruger box was labeled Ruger 57 5.7 x 28 Serial Number 641-30699, which is an exact match for the specifications and serial number of the firearm located in the vehicle. Inside the Ruger gun box was a bottle of Remy Martin Champagne.

12. Post Miranda, SOTO and GARCIA mentioned they picked up the Honda at Mauricio's business in Montebello, California. Initially the events described by GARCIA and SOTO were inconsistent. GARCIA claimed SOTO picked him up, and they both went to pick up the Honda that SOTO had purchased and drove directly to the border. GARCIA further claimed he did not stop anywhere during the trip until they were stopped at the border. SOTO, on the other hand, claimed he picked up GARCIA earlier and admitted they had in fact made a few stops to include Mauricio's business. Investigators were able to identify Mauricio as Mauricio Lopez, and the location of the business as 413 West Olympic Boulevard in Montebello, California. SOTO admitted to meeting with another individual named Victor. SOTO stated Victor was selling firearms and other contraband. SOTO claimed he and GARCIA both handled a few of the firearms, including a 12 shot Taurus

6

firearm. SOTO claimed he got the Ruger gun box from Victor because he liked the way it looked and put the gun box with a bottle of alcohol in the Chevrolet HHR. When confronted with the differences between their contradicting accounts of the events that took place prior to driving to the border, GARCIA admitted that he and SOTO had in fact met with Victor, who was selling firearms. GARCIA mentioned that Victor had multiple firearms, including a Taurus 12 shot. However, GARCIA claimed he never handled the firearms and even left because he was not supposed to handle firearms due to his criminal record. GARCIA further admitted to using the rachet/socket tool found in the vehicle in the past, but GARCIA claimed he did not touch the bolt holding down the rear seat. SOTO admitted the rachet was possibly his but that he did not own and had never seen the socket before. SOTO stated he purchased the blue paper towels in which the firearm had been wrapped. But, GARCIA and SOTO both denied knowledge of the firearm in the vehicle.

13. SOTO claimed he called Victor prior to looking at the firearms on Target Device 2. SOTO believed he obtained Victor's number from GARCIA, and GARCIA sent the contact information from GARCIA's cellular telephone (Target Device 1). After meeting with Victor, SOTO and GARCIA traveled in tandem to the U.S./Mexican border. SOTO claimed GARCIA had followed the wrong car and exited the freeway in San Diego. SOTO stated he and GARCIA were in contact via their cellular telephones to find each other so they could continue to travel in tandem.

14. During the interview GARCIA, appeared nervous in his demeanor when confronted by some inconsistencies in his story. At one point during the interview, GARCIA threw up in a garbage can outside the interview room. GARCIA identified Target Device 1 as his cellular telephone and provided investigators with the passcode.

15. A review of GARCIA's criminal history, indicated GARCIA has multiple felony convictions for Robbery Second Degree; Burglary: Second Degree; Possession of Controlled Substance; 666/484 PC Petty Theft with Prior; and Bringing a Controlled Substance into Jail/Prison.

7

16. A review of SOTO's criminal history, revealed several arrests for Possession of a Controlled Substance; Robbery; Possession of a Controlled Substance for Sale; and Transportation of a Controlled Substance for Sale. SOTO is currently on probation for a Forgery conviction (misdemeanor) and is restricted from possessing firearms as a condition of probation. At the time of this encounter, SOTO had an active arrest warrant out of Los Angeles County.

17. Based upon GARCIA's tattoos and his admission, GARCIA is associated with the Varrio East Side 213 Spruce Street Locos (SLS) criminal street gang. GARCIA's moniker is Wolf. GARCIA has "SLS" on his neck, "213" on his stomach and back of head, "Wolf" on his eyelid, and "East Side" on his lower back. Varrio East Side 213 Spruce Street Locos in a Sureno street gang.

18. A review of law enforcement records indicated Mauricio Lopez-Hernandez was arrested by Whittier Police Department at 413 West Olympic Blvd Montebello, CA on 08/30/2019 for possession of a shotgun and an ounce of methamphetamine.

19. Target Device 1 was found by CBPO in the Chevrolet HHR. GARCIA admitted ownership of Target Device 1. Target Device 2 was found in the Honda Civic. SOTO admitted to being the owner of Target Device 2. Target Device 3 and Target Device 4 were discovered in the Chevrolet HHR. SOTO admitted being the owner of Target Device 3 and Target Device 4. Target Device 5 was found inside the Honda Civic driven by SOTO.

20. Based upon my training and experience, the contradictory statements made by GARCIA and SOTO, SOTO's non-sensical explanation for why his vehicle (driven by GARCIA) contained a gun box that happened to be an exact match for the seized firearm, and, the previous arrests of GARCIA and SOTO involving the possession of controlled substances and transportation of controlled substances for sale, I believe GARCIA and SOTO are involved with a DTO and were transporting the firearm and ammunition on behalf of a DTO or performing other illicit DTO business. But because SOTO had an active

warrant of arrest that would have called attention to himself at the border, I believe SOTO conspired with GARCIA to export the firearm and ammunition from the United States to Mexico in a manner that would not place the firearm in the same vehicle as SOTO.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in gang, firearms, and drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that GARCIA and SOTO were using the Target Devices to communicate with others to further the exportation of firearms from the United States on behalf of or in furtherance of a DTO. Further, in my training and experience, DTO's may be involved in the planning and coordination of a drug and firearms smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the controlled substances and/or firearms. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on December 1, 2020, up to and including January 1, 2021.

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect each Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. On December 30, 2020, GARCIA consented to a search of Target Device 1. Law enforcement attempted to conduct a forensic search of Target Device 1 but were unable due to technical difficulties. Law enforcement has not attempted to obtain the

evidence sought by this warrant on Target Device 2, Target Device 3, Target Device 4, nor Target Device 5.

## CONCLUSION

26. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of SOTO and GARCIA's violations of the Target Offenses. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 through A-5 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
SPECIAL AGENT ANDREW FLOOD
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of February, 2021.

_Barbara L Major_
HONORABLE BARBARA L. MAJOR
United States Magistrate Judge

11